

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RICHARD JOHNSON,                                    CV. 09-701-MA

               Petitioner,                      OPINION AND ORDER

    v.

OREGON BOARD OF PAROLE AND
POST-PRISON SUPERVISION and
KLAMATH COUNTY OREGON PAROLE
OFFICER WILLIAM WILKENLOH,

             Respondents.

TONIA L. MORO
Assistant Federal Public Defender
15 Newtown Street
Medford, OR 97501

    Attorney for Petitioner

JOHN KROGER
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street
Salem, OR 97301-4096

    Attorneys for Respondents

MARSH, Judge

1 - OPINION AND ORDER

Petitioner Richard Johnson, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is granted.

## FACTUAL BACKGROUND

On November 20, 2000, petitioner was indicted on five counts of Sexual Abuse in the First Degree, one count of Unlawful Sexual Penetration in the First Degree, and one count of Sodomy in the First Degree.  The charges arose out of three separate incidents occurring between January 1, 1998 and February 20, 1999, between petitioner and the victim, D.G., who was then eight years old. The incidents occurred when petitioner and his significant other, Judy Boren, were babysitting D.G.

The alleged abuse came to light on or about February 20, 1999, after D.G. spent the night with petitioner and Ms. Boren at a motel room where petitioner was then residing.  The following morning, D.G. reported to her mother, Diana Johnson, that petitioner entered the bathroom while she was showering and washed her breasts and genital area and that petitioner had put his hand in her shorts for about ten minutes.

D.G.'s mother reported the incident to the police.  Oregon State Trooper William Hakin interviewed D.G. at the Klamath Falls Patrol Office.  Following Trooper Hakin's interview, Ms. Johnson

2 - OPINION AND ORDER

scheduled an evaluation for D.G. at the Klamath Lake Child Abuse Response and Evaluation Services (CARES).[1]

The CARES physical examination of D.G. was conducted by Gerri Britsch, M.D., and the CARES interview of D.G. was conducted by Social Worker Robin Flagor. Oregon State Police Sergeant Stephanie Gourley watched the interview from behind a one-way mirror. During the videotaped CARES interview, D.G. repeated her statement that petitioner had put his hand in her shorts for ten minutes and also that petitioner licked her vagina. In the interview, D.G. revealed two additional instances of abuse by petitioner occurring at a house on Fargo street where D.G., her mother, and petitioner all lived. D.G. described the first incident occurring behind the house in a metal shed, and a second incident occurring inside the house. Officer Gourley arrested petitioner following the CARES interview.

When confronted by Segeart Gourley with the charges by D.G., petitioner contended that it was a misunderstanding, and that a letter he planned to send to Ms. Johnson would resolve the issue. Petitioner contended that he had examined D.G., but that the examination was for purposes of determining if D.G. had been

---

[1]A CARES evaluation consists of two parts: (1) a physical examination performed by a medical provider specially trained in the area of child abuse, and (2) an interview conducted by a nurse or social worker specially trained in the area of child abuse. The interview is typically videotaped.

sexually abused.  (Resp. Ex. 120.)  Petitioner facilitated Officer Gourley obtaining the letter.

Petitioner waived his right to a jury trial and was tried before the court on March 13-14, 2001.  D.G. did not testify at trial.  The prosecution's primary witnesses were Trooper Hakin, Ms. Flagor, and Dr. Britsch.  Hakin testified that he interviewed D.G. at the Klamath Lake Patrol Office.  During that interview, Hakin testified that D.G. told him that while she was spending the night with petitioner, petitioner put his hand in her shorts for ten minutes.  Hakin testified that D.G. described that immediately following the incident, she attempted to call her mother, but petitioner would not let her.

Ms. Flagor testified that she conducted the CARES interview with D.G. and that the CARES interview was videotaped.  Flagor also authenticated several anatomically correct drawings that Flagor used during her interview with D.G. to clarify what parts of the body D.G. was describing.  The drawings and CARES videotape were admitted as evidence and viewed by the judge.

Dr. Britsch testified that she performed the CARES physical examination on D.G.  Dr. Britsch testified that D.G.'s genital examination was normal in that it did not reveal any signs of sexual abuse.  Dr. Britsch also testified that D.G. stated that petitioner had touched her "privates" or "cooter." (Resp. Ex. 103, Trial Transcript (Tr.) 79-80.)  Dr. Britsch also offered her

medical opinion that D.G. suffered "probable child sexual abuse." (Tr. 85.)   The prosecution also admitted as evidence two letters written by petitioner describing the three incidents with D.G.

Petitioner's trial counsel objected to the admission of D.G.'s out-of-court statements to Hakin, Flagor and Britsch, as well as the CARES videotape and drawings, contending that because D.G. was unavailable for cross-examination, admission of the statements violated the Confrontation Clause of the Sixth Amendment.   (Tr. at 25-28, 51-52.)   The trial court ruled that D.G. was unavailable, and that the statements to Trooper Hakin and CARES personnel, as well as the videotape and drawings, were reliable under statutory exceptions to hearsay under the Oregon Evidence Code (OEC) Rules 803(18a)(b)(sex abuse statements by child witness) and 804 (statements for medical treatment or diagnosis).

Petitioner testified in his own defense.   Petitioner testified that he suspected that D.G. had been sexually abused, based on two previous instances where D.G. had grabbed his hand and placed it on her privates.   Petitioner admitted to washing D.G. at the motel, but did so because the water in the shower could become quite hot unexpectedly. (Tr. 174.) Petitioner admitted that he touched petitioner's genitalia, but contended that he did so in order to determine whether her hymen was intact, and recalled that his chin may have touched D.G.   (Tr. 189-90.)   Petitioner denied licking D.G. or that his contact was for a sexual purpose.

Petitioner was found guilty of one count of Unlawful Sexual Penetration in the First Degree and one count of Sodomy in the First Degree. Petitioner was acquitted of the remaining charges. Petitioner was sentenced to 100 months on the Unlawful Sexual Penetration count, and 100 months on the Sodomy count, to run concurrently. (Resp. Ex. 101.) Petitioner also was sentenced to a 20-year term of post-prison supervision, less time served pursuant to O.R.S. § 144.103.

Petitioner filed a direct appeal, raising a single issue – that the trial court erred in admitting statements made by D.G. to Hakin and CARES personnel when D.G. was not made available at trial as a witness. (Resp. Ex. 104.) Petitioner argued, in part, that the statements did not have the requisite "indicia of reliability" to qualify as an exception to hearsay necessary to satisfy the Confrontation Clause under Ohio v. Roberts, 448 U.S. 56, 66 (1985).

The Court of Appeals affirmed petitioner's conviction without opinion and the Oregon Supreme Court denied review on January 27, 2004. State v. Johnson, 190 Or. App. 398, 79 P.3d 917 (2003), rev. denied, 336 Or. 377 (2004). Petitioner's appellate judgment issued on March 2, 2004. (Resp. Ex. 108.) Petitioner did not file a petition for writ of certiorari. Petitioner's conviction became final on or about June 2, 2004, when his 90 day period within which to petition for writ of certiorari elapsed.

6 - OPINION AND ORDER

Meanwhile, on March 8, 2004, the United States Supreme Court issued Crawford v. Washington, 541 U.S. 36 (2004), which partially overruled Ohio v. Roberts. In Crawford, the Supreme Court determined that out-of-court testimonial statements are barred under the Confrontation Clause, unless the witnesses are unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. 541 U.S. at 68.

On October 21, 2004, petitioner filed a state post-conviction proceeding, alleging three claims of ineffective assistance of counsel: (1) counsel failed to object to inadmissible hearsay from D.G.; (2) counsel failed to object to the admission of portions of the letter written by petitioner; and (3) appellate counsel failed to anticipate and argue the Confrontation Clause issues set forth in Crawford.

A week prior to the post-conviction hearing, petitioner filed a notice under Church v. Gladden, 244 Or. 308, 417 P.2d 993 (1966), attempting to amend one of his claims and asserting that Crawford rendered his conviction "void." (Resp. Ex. 132.) Petitioner contended that he did not need to assert an ineffective assistance of counsel claim to obtain relief under Crawford. The post-conviction court denied relief without comment or citation. (Resp. Ex. 129.)

On appeal, petitioner asserted the PCR court erred in denying him relief because Crawford was issued before his conviction became final, and therefore, applied to his case.   The Oregon Court of Appeals affirmed the PCR court's decision without opinion, and the Oregon Supreme Court denied review.   Johnson v. Hill, 220 Or. App. 457, 187 P.3d 231, rev. denied, 345 Or. 317 (2008).

## DISCUSSION

In the current proceeding, in ground one, petitioner asserts that his Sixth Amendment right to Due Process was violated when out-of-court witness statements were admitted, violating the Confrontation Clause under Crawford.   Petitioner also asserts ten grounds of ineffective assistance of counsel in grounds two through eleven.   Respondents move to deny habeas corpus relief on the basis that the state court's denial of ground one is entitled to deference under 28 U.S.C. § 2254(d).   Respondents also move to deny relief on the basis that petitioner has not met his burden on grounds two through eleven, and that grounds two through eleven are procedurally defaulted.   In the briefing to this court, petitioner discusses only the merits of ground one.

**I.   Ground One.**

**A.   Standards.**

Under 28 U.S.C. § 2254(d), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication:

8 - OPINION AND ORDER

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may not grant relief unless the state court applied a rule of law that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court but nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 411 (2000). Under the "unreasonable application" standard, a federal court may grant habeas relief if the state court identifies the correct governing legal principle, but applied those principles to the facts of the case in an "objectively unreasonable" manner. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Williams, 529 U.S. at 409. The state court's decision must be more than erroneous, it must be "objectively unreasonable." Bell v. Cone, 535 U.S. 685, 694 (2002); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam).

In Ground One, petitioner asserts that his rights under the Confrontation Clause of the Sixth Amendment were violated when the trial court admitted out-court-statements by D.G. According to petitioner, D.G.'s statements to Britsch, Flagor, and Hakin are not

admissible under <u>Crawford</u>.    Petitioner maintains that <u>Crawford</u> applies to his case on direct review and at post conviction because <u>Crawford</u> issued before his conviction became final.

Respondents acknowledge that <u>Crawford</u> was announced before petitioner's direct review became final, but contends that <u>Crawford</u> was not "clearly established Federal law" for purposes of review under 28 U.S.C. § 2254(d).    Respondents argue that what is "clearly established Federal law" under § 2254(d) should be assessed at the time of the *relevant state court decision*, and not when petitioner's direct review becomes final.

In this case, on direct review, the trial court, the Oregon Court of Appeals and the Oregon Supreme Court each applied <u>Ohio v. Roberts</u>, which was then controlling federal law.    <u>Crawford</u> was announced March 8, 2004, *after* the Oregon Supreme Court denied review and the appellate judgment had issued.    According to respondents, because <u>Ohio v. Roberts</u> was the controlling law at the time of the state courts' decisions, the relevant state court decisions are neither contrary to, nor an unreasonable application of clearly established Federal law under 28 U.S.C. § 2254(d)(1).

Therefore, the critical question in this case becomes what date should be used for assessing "clearly established Federal law" – the date the judgment of conviction becomes final, or the date of the relevant state court decision.

As the parties correctly indicate, there is a conflict among the Circuit Courts of Appeal as to whether clearly established Federal law is examined as of the date of the relevant state court decision, or the date the conviction becomes final for AEDPA purposes. Compare Greene v. Palakovich, 606 F.3d 85, 95 (3d Cir. 2010)("we now hold that the date of the relevant state-court decision is the controlling date"); with Miller v. Stovall, 608 F.3d 913, 919 (6th Cir. 2010)("We conclude that when the governing law changes between a state court's ruling and the date on which a petitioner's conviction became final, a federal habeas court reviewing the state-court judgment must apply the law that controlled at the time his state-court conviction became final.")(internal quotations and citation omitted); and Foxworth v. St. Amand, 570 F.3d 414, 430-32 (1st Cir. 2009)(determining that the date the conviction became final is the correct approach), cert. denied, 130 S. Ct. 1710 (2010). The Supreme Court has not yet spoken directly on the issue, and may soon provide needed guidance as the Court has recently granted certiorari in Greene. Greene v. Fisher, 2011 WL 1225723 (U.S. Apr. 4, 2011); see also Smith v. Spisak, 130 S. Ct. 676, 681 (2010)(noting "some uncertainty" about which is the applicable date for purposes of determining clearly established federal law).

Respondents rely on Greene. In Greene, a federal habeas petitioner wanted to apply the Supreme Court's determination in

Gray v. Maryland, 523 U.S. 185 (1998) to his case. 606 F.3d at 91.
The Gray decision was announced while the petitioner's direct
appeal was pending with the Pennsylvania Supreme Court and before
his time for petitioning for certiorari elapsed. Id. The Greene
court determined that for purposes of § 2254(d)(1), the controlling
date for determining what constitutes "clearly established Federal
law" is the "date of the relevant state-court decision." Id. at
94-95. Therefore, because Gray had not been determined at the time
of the relevant state court decision, the petitioner could not
benefit from Gray, and was unable to demonstrate that his
conviction was an "unreasonable application" of "clearly
established Federal law." Id. at 105-06.

Petitioner argues that to deny him the benefit of Crawford is
contrary to the jurisprudence announced in Griffith v. Kentucky,
479 U.S. 314 (1987). In Griffith, the Court discussed that "the
retroactivity analysis for convictions that have become final must
be different from the analysis for convictions that are not final
at the time the new decision is issued." 479 U.S. at 321-22; see
Brecht v. Abrahamson, 507 U.S. 619, 634 (1993)(noting that new
rules always have retroactive application on direct review, but
rarely have retroactive application on federal habeas review). The
Griffith court concluded that "failure to apply a newly declared
constitutional rule to criminal cases pending on direct review
violates basic norms of constitutional adjudication." Griffith,

479 U.S. at 322.   Therefore, because Griffith's petition for certiorari was pending at the time <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) was issued, it applied to Griffith's conviction.

The Ninth Circuit has yet to definitively address which date should be used for purposes of determining what is "clearly established Federal law" under the AEDPA.   However, the Ninth Circuit recently has noted the existing ambiguity about which date should be used for AEDPA purposes.   In <u>Thompson v. Runnel</u>, the Ninth Circuit applied new Supreme Court authority announced in <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), to the federal habeas petitioner's case where <u>Seibert</u> was announced before the petitioner's time for petitioning for certiorari elapsed.   621 F.3d 1007, 1015 (9th Cir. 2010).   The <u>Thompson</u> court specifically discussed that the parties did not argue that <u>Seibert</u> was not "clearly established" under the AEDPA, and therefore declined to address whether <u>Seibert</u> was clearly established Federal law.   <u>Id.</u> at 1016 n.2. (stating that the Supreme Court has described "'some uncertainty' surrounding whether clearly established law is assessed by the date the state court conviction becomes final, or as of the date of the relevant state court decision")(quoting <u>Smith v. Spisak</u>, 130 S. Ct. at 681).

Moreover, Judge Ikuta filed a dissenting opinion in <u>Thompson</u>, contending that the appropriate cutoff date should be "the time of the relevant state court decision."   <u>Thompson</u>, 621 F.3d at 1023

13 - OPINION AND ORDER

("the Supreme Court has never held that a reviewing court may ignore the statutory command of § 2254(d) and *grant* habeas relief when the state court's decision was consistent with then-applicable Supreme Court precedent")(Ikuta, J., dissenting).  But see Shardt v. Payne, 414 F.3d 1025, 1034 (9th Cir. 2005)(finding that petitioner could have the benefit of Apprendi because it was announced six months before his case was final).

Other district courts within the Ninth Circuit have used the date the conviction became final as the appropriate date for assessing whether Crawford applies to a petitioner's case.  See, e.g., Benjamin v. Prosper, 2010 WL 4630252, *16 n.3 (E.D. Cal. Nov. 8, 2010)(determining that because Crawford was decided after petitioner's conviction became final under Caspari, Crawford did not apply); Livingston v. Small, 2009 WL 4980336, *26 n.8 (C.D. Cal. Dec. 10, 2009)(applying Crawford to habeas Confrontation Clause claim because Crawford was decided before petitioner's direct review was final on June 28, 2004); James v. Marshall, 2008 WL 4601238, *15 & n.4 (C.D. Cal. Aug. 13, 2008)(applying Crawford because Crawford was announced while case on direct review before conviction became final); Gutierrez v. Yates, 2008 WL 4217865, *12 (C.D. Cal. Apr. 8, 2008), adopted, 2008 WL 4279600 (C.D. Cal. Sept. 11, 2008)(applying Crawford when evaluating petitioner's Confrontation Clause claim where petitioner's conviction became final on April 28, 2004, before Crawford).

In the absence of clear direction from the Supreme Court or the Ninth Circuit, I conclude that the appropriate date for determining what is "clearly established Federal law" is the date the petitioner's conviction becomes final. Using finality as the cutoff date provides a bright line and avoids having to assess which state court decision is the "relevant" decision for retroactivity purposes. Additionally, I find that using the date of finality is most consistent with the principles espoused in Griffith. Griffith, 479 U.S. at 322. Accordingly, I conclude that Crawford applies to petitioner's claim of trial court error that he asserted on direct review. Accord Riva v. Kirkland, 315 Fed. Appx. 667, 670 n.3 (9th Cir. 2009)(not selected for publication)(finding that Crawford applied because Crawford issued before his case became final on direct review); see also Shardt, 414 F.3d at 1033 (noting that "[i]f Mr. Shardt's case were still pending on direct appeal when Blakely was decided, we would be compelled to hold that Blakely was applicable").

**B. Application of Crawford to petitioner's direct review.**

Ordinarily a federal court "looks through" a higher state court's summary disposition to the last reasoned state court decision. See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), cert. denied, 534 U.S. 944 (2001). In the instant case, the trial court, the Oregon Court of Appeals, and the Oregon Supreme Court each applied Ohio v. Roberts on direct review.

Because of the intervening change in the law, the state court decision is now "contrary to" clearly established Federal law as determined by the Supreme Court in Crawford. See Frantz v. Hazey, 533 F.3d 724, 733-34 (9th Cir. 2008)(concluding that a decision by a state court is contrary to clearly established law if it applies a rule that contradicts governing law set forth in Supreme Court cases); Price v. Vincent, 538 U.S. 634, 640 (2003)(same). Accordingly, this court must examine petitioner's Confrontation Clause claim under Crawford de novo. Frantz, 533 F.3d at 735; Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).

The Confrontation Clause of the Sixth Amendment provides that in criminal cases, the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI; Pointer v. Texas, 380 U.S. 400, 486 (1965). The "witnesses" to which the Confrontation Clause applies includes those testifying in court, as well as certain out-of-court declarants. Ponce v. Felker, 606 F.3d 596, 599 (9th Cir.), cert. denied, 131 S. Ct. 521 (2010). The Crawford Court ruled that the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner:  by testing in the crucible of cross-examination." Crawford, 541 U.S. at 61. Thus, Crawford held that testimonial out of court statements are barred by the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of

whether such statements are deemed reliable by the trial court. Crawford, 541 U.S. at 68.   Crawford applies to all testimonial statements.   The Crawford opinion did not define "testimonial" but the Court said that testimonial statements must include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford, 541 U.S. at 68.

Later, in Davis v. Washington, the Supreme Court described that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the investigation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822 (2006).

I examine whether D.G.'s statements to Hakin, Britsch and Flagor are testimonial.

**1.    statements to Trooper Hakin.**

With respect to Hakin, it is clear that D.G.'s statements to him are testimonial in nature, as they readily constitute police interrogation as that term is commonly understood.  Crawford, 541 U.S. at 68.  Hakin interviewed D.G. at the patrol office for the purpose of establishing or proving past facts which would be potentially relevant to a later prosecution.  See State v. Mack,

17 - OPINION AND ORDER

337 Or. 586, 101 P.3d 349 (2004).   D.G.'s statements to Hakin
should not have been admitted because D.G. was not subject to
cross-examination.   Consequently, admission of D.G.'s statements to
Hakin violated the Confrontation Clause.   Crawford, 541 U.S. at 68;
Gutierrez, 2008 WL 4217865 at *13.

### 2.   D.G.'s statements to Dr. Britsch and Ms. Flagor.

The Oregon Supreme Court has concluded that statements given
to physicians and social workers during CARES interviews are
testimonial in nature.   State ex. rel Juvenile Dept. of Multnomah
County v. S.P., 346 Or. 592, 626-27, 215 P.3d 847 (2009); U.S. v.
Bordeaux, 400 F.3d 548, 557 (8th Cir. 2005)(finding forensic
interview of child witness was testimonial, despite that statements
were also for a medical purpose).   Accordingly, I must conclude
that admission of D.G.'s  statements to Flagor and Britsch and
admission of the CARES videotape violate the Confrontation Clause.

I disagree with respondents' suggestion that the admission of
D.G.'s out of court statements were not an unreasonable application
of Crawford as examined before the Davis decision in 2006.   In this
case, I find that the Oregon Supreme Court's decision in State v.
Mack, is persuasive.   337 Or. at 588.   In Mack, the court readily
found that admission of out of court statements by a child sex
abuse victim to a Department of Human Services caseworker were
testimonial under Crawford.   Id.   Moreover, Mack was decided only
a few months after Crawford, without the additional clarification

18 - OPINION AND ORDER

supplied by <u>Davis</u>.  I see no principled distinction between the DHS worker in <u>Mack</u> and the physician and social worker at issue in the present case.  Accordingly, I conclude that admission of the statements violated the Confrontation Clause under <u>Crawford</u>.

**3. Harmless error analysis.**

Confrontation Clause errors are subject to harmless error analysis.  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684 (1986)(Confrontation Clause violations are subject to a harmless error standard); <u>United States v. Nielsen</u>, 371 F.3d 574, 581 (9th Cir. 2004)(<u>Crawford</u> violations are subject to a harmless error standard on direct review).  In the habeas context, the court must consider whether a Confrontation Clause error had a substantial and injurious effect or influence on the jury's verdict.  <u>Whelchel v. Washington</u>, 232 F.3d 1197, 1206 (9th Cir. 2000).

When assessing the harmlessness of a Confrontation Clause violation, courts consider the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case.  <u>Van Arsdall</u>, 475 U.S. at 684; <u>Whelchel</u>, 232 F.3d at 1206.

Petitioner argues that the admission of D.G.'s statements to Flagor, Britsch, and Hakin were not harmless, as there was no other independent corroborating evidence to support a conviction.

Petitioner also contends that the overall strength of the state's case was weak, as evidenced by petitioner's acquittal on several other counts in the indictment.  Petitioner is correct.

Without D.G.'s out of court statements, the remaining evidence consisted of the testimony of Sergeant Gourley, petitioner's trial testimony, and petitioner's two handwritten letters.  I examine that evidence in turn.

### a.    Sergeant Gourley

Sergeant Gourley, one of the officers investigating the allegations made by D.G., testified that shortly after petitioner was taken into custody, petitioner described how he had washed D.G. in the shower, and tried to do "the appropriate thing." (Tr. 115.) Gourley also testified that petitioner stated that D.G. had laid on the motel bed with her legs open in an "inviting way" (Tr. 117). Gourley testified that petitioner said that he had placed his hand on D.G.'s genital area and applied pressure.  (Tr. 116-117.) Gourley stated that petitioner told him that petitioner believed someone else had abused D.G., and that petitioner wanted to determine how much someone else had sexually abused D.G.  (Tr. 118.)  Gourley testified that petitioner described how he then lowered his face to D.G.'s privates, and watched to see if D.G. would react, and when his chin touched D.G., petitioner stated that he moved his head away.  (Tr. 118.)  Gourley also testified that

petitioner insisted Gourley obtain a letter he had written to D.G.'s mother explaining the incident at the motel. (Tr. 121-24.)

Gourley also described a second letter written by petitioner explaining the motel incident that petitioner wrote while in jail. (Tr. 124.) On cross-examination, Gourley admitted that petitioner did not state that he placed his hand or finger in D.G.'s vagina, but that petitioner described putting his hand on the "hump" above D.G.'s vagina. (Tr. 127.)

### b.    petitioner's testimony

At trial, petitioner testified in his own defense. Petitioner admitted that he touched D.G.'s vagina for two seconds to "see if that membrane was still there" because he strongly suspected that someone else had sexually abused D.G. (Tr. 185-186.) Petitioner denied using his tongue on D.G. Although petitioner stated that he was looking for some kind of reaction from D.G., petitioner denied that he touched D.G. to arouse himself or D.G. sexually. (Tr. 188-90.)

### c.    petitioner's letters

In one of the letters that petitioner insisted would explain his actions, petitioner describes the incident in the motel room. In the letter, petitioner states that D.G. laid on the bed in an "invitational way" and that D.G. was "definitely inviting me to do something." (Resp. Ex. 120.) Petitioner wrote that he applied pressure on D.G.'s privates and stated that he was being "fatherly

21 - OPINION AND ORDER

minded" and just "trying to find out how far somebody did go with
her." (Id.) Petitioner wrote that he wondered "how much can a
grown man do with a kid this little." Petitioner wrote that he
lowered his head, and when his chin touched something, he pulled
away "because it was going in a direction I didn't like." (Id.)
A second letter written by petitioner contains essentially the same
information. (Resp. Ex. 127.) Both letters were admitted into
evidence at trial.

   **4.   analysis.**

   With respect to the Sodomy in the First Degree charge, the
state was required to establish that petitioner's mouth contacted
D.G.'s genitals. O.R.S. §§ 163.305, 164.405. The only evidence to
support the allegation that petitioner licked D.G.'s vagina is
D.G.'s out-of-court statements to Britsch, Flagor and that on the
CARES videotape. At trial, petitioner denied that he used his
tongue on D.G., and his letters are devoid of any such admission.
Without D.G.'s statements to Britsch and Flagor, and the CARES
videotape, there is insufficient evidence in the record to support
the Sodomy charge. Clearly, admission of D.G.'s out of court
statements had a substantial and injurious effect on the Sodomy
verdict. Accordingly, I cannot conclude that the Confrontation
Clause error was harmless. Van Arsdall, 475 U.S. at 684; Whelchel,
232 F.3d at 1206; see also Winzer v. Hall, 494 F.3d 1192, 1195 (9th
Cir. 2007)(finding erroneous admission of hearsay statements had

substantial and injurious effect on verdict as the hearsay was the only evidence of element of the crime).

With respect to Unlawful Sexual Penetration charge, the state was required to prove that petitioner intentionally penetrated D.G.'s vagina with an object other than his mouth or penis. O.R.S. § 163.411. At trial, petitioner admitted to briefly touching D.G. to assess whether her hymen was intact. However, I conclude that the state could not have demonstrated proof beyond a reasonable doubt without D.G.'s out of court statements. Although I find the letters written by petitioner to be disturbing, petitioner does not admit to digital penetration in the letters themselves. (Resp. Exs. 120, 127.) Petitioner also did not admit to penetration in his statements to Gourley, but said that he placed his hand on the "hump" above the vagina. Moreover, the remainder of the case against petitioner was comparatively weak, as demonstrated by petitioner's acquittal on five other charges. Therefore, I conclude that admission of D.G.'s out of court statements had a substantial injurious effect on petitioner's conviction for Unlawful Sexual Penetration. Van Arsdall, 475 U.S. at 684; Whelchel, 232 F.3d at 1206. Accordingly, I cannot conclude that the Confrontation Clause error was harmless.

In sum, because the state court's rejection of petitioner's Confrontation Clause claim was objectively unreasonable under

<u>Crawford</u>, and because the error was not harmless, petitioner is entitled to habeas corpus relief on ground one.

**C.    Application of <u>Crawford</u> to Post-Conviction.**

Respondents assert that petitioner's <u>Crawford</u> claim on post-conviction is barred by the state procedural rule which prevents re-litigation of issues previously raised on direct review. <u>See Reynolds v. Cupp</u>, 71 Or. App. 571, 692 P.2d 648 (1984), <u>rev. denied</u>, 298 Or 597 (1985); O.R.S. § 138.550(2). According to respondents, because petitioner failed to seek *certiorari* on direct review, he should not be entitled to assert his <u>Crawford</u> claim on collateral review.

Petitioner asserts that he is not seeking retroactive application of <u>Crawford</u>, but that <u>Crawford</u> applies to his post-conviction proceeding because that decision issued before his conviction became final on direct review. And, petitioner submits that he could not have raised a <u>Crawford</u> claim on direct review because that case was not yet in existence, and therefore he is not precluded from asserting that claim at post-conviction. Petitioner is correct.

First, it is not clear that the post-conviction court relied upon a state procedural rule to deny petitioner's Confrontation Clause claim. The PCR court offered no rationale for its denial of petitioner's claims. Because there was no express invocation of a state rule, I cannot conclude that the PCR court relied upon that

basis for rejecting petitioner's PCR claims.[2] See Cone, 129 S. Ct.
at 1780; Coleman, 501 U.S. at 729-30; Valerio v. Crawford, 306 F.3d
742, 773 (9th Cir. 2002), cert. denied, 538 U.S. 994)(finding that
state court must actually rely on state rule to be an adequate
state ground).

Second, petitioner correctly indicates that retroactivity
principles do not prevent application of Crawford to his claim on
collateral review. See generally Teague v. Lane, 489 U.S. 288, 310
(1989). Teague is a principle of non-retroactivity, which
"*prevents* a federal court from granting habeas corpus relief to a
state prisoner based on a rule announced *after his conviction and
sentence became final.*" Caspari v. Bohlen, 510 U.S. 383, 389
(1994)(emphasis added). "A state conviction becomes final for
purposes of retroactivity analysis when the availability of direct
appeal to the state courts has been exhausted and the time for
filing a petition for a writ of certiorari has elapsed or a timely

----

[2]I also am not convinced that O.R.S. § 138.550(2) or Palmer
should be used to bar consideration of petitioner's
constitutional claim. Oregon courts have suggested that an
intervening change in Constitutional law between petitioner's
direct appeal and post-conviction proceeding does not prevent
consideration of a claim based on the new constitutional
principle where a timely post-conviction proceeding is pursued.
See Long v. Armenakis, 166 Or. App. 94, 101, 999 P.2d 461, rev.
denied, 330 Or. 361 (2000); cf. North v. Cupp, 254 Or. 451, 462,
461 P.2d 271 (1969)(discussing exception to post-conviction
procedural bar where "the right subsequently sought to be
asserted was not generally recognized to be in existence at the
time of trial").

filed petition has been finally denied." <u>Caspari</u>, 510 U.S. at 390.
<u>See also</u> <u>Whorton v. Bockting</u>, 549 U.S. 406, 1181 (2007)(defining a
"new rule" as one that was not dictated by precedent "'existing at
the time the defendant's conviction became final'")(quoting <u>Saffle
v. Parks</u>, 494 U.S. 484, 495 (1990)). Because petitioner's
conviction was not yet final at the time <u>Crawford</u> issued,
retroactivity principles do not bar this court's review of his
Confrontation Clause claim.

Thus, I conclude that <u>Crawford</u> applies to petitioner's post-
conviction proceeding. And, for the reasons stated above
concerning petitioner's claim on direct appeal, the state court's
rejection of his Confrontation Clause claim on post-conviction is
objectively unreasonable under <u>Crawford</u>. As noted above, the error
is not harmless, and petitioner is entitled to habeas relief on
ground one.

## II.  **Grounds Two Through Eleven.**

Respondents allege that petitioner has failed to sustain his
burden of demonstrating that he is entitled to habeas corpus relief
because petitioner fails to discuss the merits of grounds two
through eleven. I agree. <u>See</u> <u>Renderos v. Ryan</u>, 469 F.3d 788, 800
(9th Cir. 2006), <u>cert. denied</u>, 551 U.S. 1159 (2007)(petitioner
waived issues where there was no attempt to set forth legal
standards or an attempt to meet them); <u>Silva v. Woodford</u>, 279 F.3d
825, 835 (9th Cir.), <u>cert. denied</u>, 537 U.S. 942 (2002)(habeas

petitioner bears burden of proof).  In his briefing to this court, petitioner advises that he "proceeds with Ground One."

Additionally, the court has reviewed the record and is satisfied that grounds two through eleven are procedurally defaulted.  Petitioner presented several of his ineffective assistance of counsel claims to the PCR court.  However, petitioner did not assert any grounds of ineffective assistance of trial counsel or appellate counsel in his appeal to the Oregon Court of Appeals or in his petition for review to the Oregon Supreme Court. Accordingly, grounds two through eleven have not been fairly presented.  Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005)(exhaustion requires that habeas claims be fairly presented to all appropriate state courts at all appellate stages); Baldwin v. Reese, 541 U.S. 27, 24 (2004). Because the time for presenting grounds two through eleven has long passed, they are procedurally defaulted.  Casey, 386 F.3d at 920; Coleman, 501 U.S. at 735 n.1.  Petitioner offers no basis to excuse his procedural default, or contend that failure to consider grounds two through eleven will result in a miscarriage of justice. Therefore, habeas relief on grounds two through eleven is denied.

## CONCLUSION

Based on the foregoing, petitioner's amended petition for writ of habeas corpus (#5) is GRANTED, on ground one an DENIED on grounds two through eleven. Petitioner's convictions for Sodomy in the First Degree and Unlawful Sexual Penetration in the First Degree are vacated. Respondents are ordered to release petitioner from custody and discharge him from all other adverse consequences of his conviction unless petitioner is brought to retrial within 90 days of the date of the Judgment herein becomes final, plus any additional delay authorized by State law.

IT IS SO ORDERED.

DATED this ___2___ day of MAY, 2011.

Malcolm F. Marsh
United States District Judge

28 - OPINION AND ORDER